**UNITED STATES of America**
v.
**Kenneth S. MOLIN and William F. Hayes.**
**Cr. No. 64–63.**

United States District Court
D. Massachusetts.

July 13, 1965.

described in the ten Counts of the Indictment knowingly and willfully by a false statement defrauded the government of the United States with a specific intent and purpose of accomplishing a fraud against the United States.

In every serious criminal case, as you know, the proceedings usually begin with an Indictment by the Grand Jury. But the Indictment is not evidence. The Indictment is merely a charge or complaint. Usually the Grand Jury that presents it has listened only to such witnesses as the government chose to call before it. Rarely is the prospective defendant before the Grand Jury. Rarely are his witnesses there, and his counsel is never there. You are thus the first Jury which will try these two defendants. You are to remember that each is entitled to be treated separately from the point of view of any verdicts that you return. Each of them has the benefit of the presumption of innocence. This means that the government has the burden of proving beyond a reasonable doubt that that particular defendant is guilty as charged in the Indictment.

Often you have heard the phrase "beyond a reasonable doubt." Defining the term rarely helps very much. But it is usual to say that the phrase means that you must be persuaded as you would want to be persuaded about the most important concerns of your life. You must be persuaded to a moral certainty. The government's obligation is to prove each of the essential elements of the crime beyond a reasonable doubt.

There are in this Indictment ten separate Counts. Each Count technically charges a separate crime. Hence, with respect to each particular Count, and with respect to each particular defendant in that Count, you have to render a separate verdict which, under our practice, is oral in criminal cases.

As you have heard, all counsel agree that unless the government can persuade you beyond a reasonable doubt with respect to Count 5, the government agrees, and of course the defendants agree, that

---

Gordon Martin, Asst. U. S. Atty., for the Government.

Thomas E. Dwyer, Walter Hurley, Boston, Mass., and Ronald R. Popeo, Boston, Mass., for defendants.

WYZANSKI, District Judge.

Mr. Foreman and members of the Jury, you have been listening during part of three weeks to a case which, as I hope you will realize when I have finished charging you, while complicated in certain of its factual circumstances, is ultimately quite simple. With respect to each of the defendants, the question is whether the government has proved beyond a reasonable doubt that that particular defendant has in the particulars

the government cannot succeed on any other Count, so that Count 5 is in one sense the central Count in the Indictment.

██ The burden resting upon the government to prove a case beyond a reasonable doubt means, among other things, that the government has the duty to call such witnesses as it deems to be relevant to the charge. A defendant has no duty whatsoever to aid in any way in the presentation of the case. The United States Constitution, in the Fifth Amendment, provides in effect that a defendant cannot be required to take the stand, and you, as jurors, are forbidden to draw any inference against a defendant merely because he does not take the stand. He has every right to sit in the courtroom and say, "So what?" It is the government's duty to prove the case.

As you will remember, in this particular case, one defendant chose to take the stand and the other defendant chose not to. This difference in trial tactics is no concern of yours. Moreover, you will remember that on Friday, after the government had concluded its case-in-chief, Mr. Molin through his counsel made it quite plain that he was not concerned with any evidence offered thereafter, and, so far as his particular case is concerned, he is entitled to have that choice of his respected. Whatever Mr. Hayes or his counsel chose to offer thereafter relates only to Mr. Hayes.

██ This is not a case in which written evidence has as a matter of law greater weight than oral evidence. You, as members of the Jury, can give such weight as you see fit to testimony, whether it is oral or written. In connection with the testimony on its factual side, it is your recollection that governs. Whatever counsel may have said about the evidence, and whatever I may say about the evidence on its factual side, you are entirely free to disregard. You are the judges of the evidence on its factual side. Your recollection of the testimony is what controls.

So far as the law goes, you are required to follow what I state to be the governing principles. If I make a mistake with respect to the law, counsel will call to my attention any mistake they think I have made, and if I have made a mistake which in their view prejudices the defendants, they will have a right of review in the Court of Appeals and, in appropriate cases, in the Supreme Court of the United States.

██ It would be idle to pretend that the general nature of the problems presented in this case struck you as entirely new. But I want to caution you at the outset that what you are concerned with is a very specific set of charges. The Grand Jury has complained that in its view you should hear a case in which they charge that the particular defendants willfully, knowingly and with the specific purpose of defrauding the United States made false statements.

Now you are not here for the purpose of passing judgment on whether the government of the United States through the Bureau of Public Roads, or whether the Commonwealth of Massachusetts through the Department of Public Works, has or has not administered the program with which they are charged efficiently and honorably.

It is none of your concern whether there was an improvident contract made with unduly high rates or unduly favorable to a particular contractor. No one asserts that in any respect these defendants had anything whatsoever to do with the negotiating of what has sometimes been called Contract 7486 in fact with two subsidiary contracts, U 2229 (13) and U 44(10), the contracts between the Commonwealth of Massachusetts and Marinucci Bros. & Co., Inc. You are not to pass upon in any way, directly or indirectly, the administration of the Department of Public Works under any well-known public figure. What you are concerned with is really a rather narrow issue.

Let me remind you that in this case there were a certain number of stipulations which to some extent simplified the case, though I suppose no one of us would say the case was as simply presented as we wish it had been. It is agreed that the Commonwealth of Massachusetts did in fact through its Department of Public Works negotiate these public contracts collectively referred to as 7486 with Marinucci Bros. & Co., Inc. And it is agreed that under the terms of that contract Marinucci Bros. were to be paid at the rate of 35 cents per cubic yard for peat removed in the area covered by the contract. This relates to Route 128, more particularly in the neighborhood of Randolph, Braintree and other adjacent towns.

Now it is not your concern that the rate of 35 cents may or may not have been excessive, and it is not your concern that Marinucci Bros, found somebody, William Brophy by name, to remove the peat at 18 cents, about half the price which Marinucci was being paid. Even if you are scandalized by that revelation with respect to the extraordinary nature of the contract, your being scandalized by that may entitle you as a voter some day to express your views but not as a juror in this case.

Since I, myself, heard over the radio and saw in the newspaper during the pendency of this case a reference to an action against Marinucci in the State Court, I am going to assume that some of you may have heard of it or read about it, and I am going to expressly direct you to ignore it. Whether Marinucci as a company, or its officers as individuals, engaged in conduct that was improper or criminal, or led to civil recovery, is entirely irrelevant, and you must, in justice to these defendants, ignore entirely anything that you may have heard or read about that quite independent litigation.

I think you will agree with me that some aspects of this case, which took a long time to be presented, were not very directly material, even though the government hopes that you will in some in-

direct way take them into account with respect to warning or notice. I refer particularly to the preliminary estimates made at the time the contract was entered into by the government and Marinucci.

Now remember, it is not shown that these defendants had anything whatsoever to do with those preliminary estimates, and it may very well be that the preliminary estimates were not taken too seriously by either the Commonwealth or the bidders except in ways which have nothing to do with this case. I do not say that this is the situation. But one could imagine that people who were interested in giving a contract to a particular contractor might schedule at a rather low figure the preliminary estimates, knowing that the contractor knew that the figure was low, and that the contractor knew perfectly well that he was not being paid on the basis of preliminary estimates but was being paid on the basis of the final amount that was actually removed, and that the amount he was being paid was not a fixed sum but a sum calculated upon a unit price of 35 cents per cubic yard. So that it might have been the object of the contracting officers of the Commonwealth and the contractors who were bidding in a way deliberately to understate in the preliminary estimates, knowing that an adjustment would be made later. Whatever may have been the history or purpose of that, the defendants had nothing to do with it. And you must not charge them in any way with respect to responsibility if there was a gross underestimate in the preliminary estimates.

Now what is the statute under which these proceedings have been brought? You will remember it is a Federal statute. Otherwise you would not be in a Federal Court. You will also remember that the interest of the United States in this is not that it was a contracting party with Marinucci Bros. Marinucci Bros. made its contract with the Commonwealth of Massachusetts. The United States through the Bureau of Public Roads had agreed to reimburse the Commonwealth up to one-half of the expenses

which the Commonwealth incurred in regard to the building of this section of Route 128, and, indeed, other parts of the highway. The statute is 18 United States Code, Section 1020. It reads, so far as pertinent, as follows: "Whoever knowingly"—I pause and start again so that you will realize how important that second word is—"Whoever knowingly makes any false statement, false representation, false report, or false claim with respect to the character, quality, quantity, or cost of any work performed, or to be performed, or materials furnished, or to be furnished, in connection with the construction of any highway or related project approved by the Secretary of Commerce [shall be punished as the statute provides]."

If you listened attentively to me, you realize that there must be a highway or related project approved by the Secretary of Commerce. The stipulation among the parties here makes it quite plain that here we are dealing with a highway or related project which was approved by the Secretary of Commerce. The Bureau of Public Roads is a section of the Department of Commerce. The Secretary of Commerce is, therefore, in charge of this whole Federal grant in aid program, and the Secretary of Commerce, according to the stipulation, gave the necessary approval for the Route 128 project.

Now the next element is that the work which is performed, or to be performed, must be in connection with the construction of one of these approved highways. You will recall the stipulation. It is shown that the contracts referred to as Number 7486 do specifically refer to the removal of peat at 35 cents per cubic yard. The stipulation has pretty nearly answered any problem with respect to that aspect of the statute.

Now the third element is that there must be a false statement, or false representation, or false report, or false claim, with respect to the character, quality, quantity, or cost of any work performed in connection with that construction. Here, of course, the govern-ment claims that there was a series of false statements with respect to the quantity of work performed in peat removal. It is in Count 5 of the Indictment said to be a false statement, which appears in these cross-sections, of the type which are Exhibit 9, the roll of blue documents, which are on the desk in front of you.

Now the other Counts refer to false statements alleged to have been made in other documents. I am not going to bother to recite to you which other documents because they are listed in the Indictment, which you have in front of you. Each Count refers particularly to the special document in which it is said that there are false statements.

Just so that you will get the point clearly, I point out to you that in Count Number 1, the false statements are supposed to have been in the so-called Semi-Monthly Estimate of the Resident Engineer for the period March 19, 1959 to April 1, 1959. I remind you that everyone has agreed that unless the defendants are guilty on Count 5 they cannot be guilty on any other Count because all the other statements are derivative according to the government's contention from what it claims are false statements in the cross-sections, to wit, the kind of blue document which constitutes Exhibit 9 in front of you.

Now you must not suppose there is any agreement or stipulation that the statements in the blue documents are false. That is an issue of fact, and the government, as I have already told you, has the burden of proving the falsity beyond a reasonable doubt.

■ A statement, of course, need not take the form of words. It may take the form of a drawing or the form of a symbol. It may take the form of an arrow, or a crow's foot, or any other kind of appropriate marking which will be understood by the person who looks at it, as the equivalent of a statement.

■ A statement may be false if the person who makes it has deliberately put down something he knows to be

wrong. A statement may be false if he knowingly has changed the figure. A statement may be false if a mark is made when the person who makes the mark knows there is no evidence one way or the other, no supporting data one way or the other, but is his pure invention, or contrivance, or imaginary figure.

But you will remember that the statement under the statute and also under the Indictment must be the statement of the particular defendant or one with whom he is engaged in a conspiracy. Now here I must state to you the general principles with respect to conspiracy, which in fact are nothing but as it were an enlargement of an older common law doctrine of aiding and abetting, or being a principal, or an accessory to a principal, said accessory being an accessory before the fact. You do not have to know all that terminology. It is just historical learning. But you do have to understand what a conspiracy is under the Federal law.

I will use the letters A and B to represent two persons. Obviously there cannot be a conspiracy unless there are at least two persons. A conspiracy exists when two or more persons formally or informally agree to share the purposes of a crime. It is sometimes loosely and inaccurately stated that a conspiracy is a partnership in crime. More accurately it is a partnership in criminal purposes. Now if two or more persons do agree formally or informally to commit a crime, then any act done by any one of them in furtherance of the conspiracy, and during its existence, and before its termination, if that act is reasonably related to carrying out the crime, then all the parties to the conspiracy are chargeable with the act.

It is just analogous to a situation where partners in civil life had agreed upon a partnership undertaking, and one of the partners in connection with the partnership does something, then the other partners are bound. But in order for there to be a conspiracy, you must, first, find by independent evidence that the two persons, or more than two persons, have agreed formally or informally to share criminal purposes. I need hardly tell you that if two or more persons do conspire to commit a crime, they seldom reduce their agreement to writing, and take it to have the agreement notarized and sealed. You have to judge from their conduct.

And in connection with people who are in governmental office, the mere fact that two or more people are in the same governmental office certainly does not show by itself that they are sharing any criminal purposes which one or the other of them may happen to have. I suppose it is perfectly clear to all of you that if somebody in the Clerk's office, was in the habit of stealing money out of the till of the Clerk's office, it would be grossly improper to impute to everybody who happened to be in the Clerk's office a conspiracy to steal from the till.

But let me give you another type of illustration, which will show to you that people who share governmental authority may under some circumstances, even without a specific agreement, be observed to share conspiratorial ends. Let us suppose that a particular key store is a bookie joint, and let us assume that A, B and C are the patrolmen regularly assigned to supervise and patrol the street on which that joint is, and let us assume it is the duty of each one of them separately to record the presence upon that street of a bookie joint if it exists. Let us suppose that the joint is plainly visible, and the kinds of activity which are carried on are shown by obvious entries to the premises, and over a period of time neither A nor B nor C reports that bookie joint. I suppose it would be open to a trier of fact, like a Jury, to conclude that A knew very well that B was not reporting and A knew very well that C was not reporting and B and C likewise knew that A was not reporting, and that they all had an unspoken agreement to leave that bookie joint functioning, and that they had jointly conspired with respect to the matter.

Now I do not want you to suppose, either from the illustration I gave you from the Clerk's office or from the illustration that I gave you with respect to the bookie joint, that I am for one moment telling you that I am of the view that these particular two defendants were in any conspiracy. The mere fact that one was a Resident Engineer and another an Assistant Resident Engineer certainly does not show a conspiracy, nor does the fact that the Resident Engineer appointed the Assistant Resident Engineer show that there was a conspiracy.

It is up to you to consider whether you are persuaded beyond a reasonable doubt by all the evidence that each of them was in fact engaged in a scheme to defraud the United States and that the other was aware of it and sharing the purpose. Now only if you find this beyond a reasonable doubt may you attribute an act or statement of one of them to the other of them. I hope that none of you will suppose that any ruling I have made in this case indicates any belief on my part that you will find that there is such a conspiracy. It is entirely up to you. All I have done is to allow you to hear the evidence. I am not trying to decide the question of fact. It is up to you.

Now I turn back to the statute and back to the second word in the statute, the word "knowingly." You will remember that in this particular statute, and in every Count of this Indictment, the government has the burden of proving beyond a reasonable doubt that the defendants acted knowingly. As here used, the word knowingly means willfully, with a corrupt purpose, with the intent specifically to cheat the government of the United States.

There was some colloquy back and forth between counsel and myself about motive. And just so that you won't be misled, let me draw to your attention the difference between intent and motive. If I strike another man, I may do it intentionally, but I may have many different kinds of motives. One motive might be self-defense. Another motive might be corporal punishment. Another motive might be to push him out of the way so that he won't be hurt by an oncoming vehicle.

Now, in a sense, the government has no responsibility whatsoever to show the motives of somebody who knowingly, willfully and intentionally cheats the United States. But it is quite natural for the government to offer evidence of motive because you sometimes feel clearer as to a man's intent if you know what his purpose and motive was. For example, if you are trying to find out whether a public official knowingly intended to cheat the United States, you surely would be interested to know whether he was bribed. If he got money from somebody, he would have a motive, and you could really almost feel certain that under those circumstances he was acting knowingly and willfully. If, on the other hand, his relationship with a third-person was merely casual or friendly, you might suppose that a statement made which benefited that other person was not necessarily made with a will to cheat the government, even though it happened to be a false statement.

I am sure you are well aware that the government, in offering the evidence it did with respect to Mr. Verrochi and his son, was trying to persuade you that there were evil motives which actuated the two defendants.

Now I made a remark which I think might influence you unduly unless I at this point make clear something which lurks in my earlier comment and might be misunderstood. It is certainly undesirable, and highly undesirable, as a matter of morality, and public policy and sensitivity for one who has the duty of inspecting the work of another to take any favor from that other. It is not quite as bad as a Judge taking a present from a litigant, but it is the kind of thing that a man ought not to do. On the other hand, unfortunately there are periods of time in a community when men are not as sensitive as they ought to be and as they wish they had been.

Sometimes it takes a revelation to make people see the impropriety of too close association or financial relations between those in power and those who are subject to that power. But you must not judge these two defendants in the light of what we hope is a more sensitive moral climate in 1965 than was the moral climate in which they worked in 1958 through 1961 or 1962.

It is not just to assume that what they now see wrongful they necessarily saw as being wrongful when they did it. Nor does it follow that because they may have committed breaches of taste you are bound to conclude that they knowingly, willfully and with specific intent to defraud acted in a particular situation. I think we all realize that when we look back on our conduct at any particular time in our lives, there are things that we wish we had done differently. But you are to remember that there was no conflict of interest statute in Massachusetts at the time. There was some moonlighting. There were some favors taken and exchanged which ran beyond what one would in a copybook for morals set down as proper. But you are not here to write copybooks on morality or manuals of etiquette. You are here to look precisely at these two defendants and to ask yourselves whether you are satisfied beyond a reasonable doubt that each of them knowingly and willfully and with a specific intent to defraud made a false statement.

Now I think that you must have sufficiently well in mind the general nature of the evidence. You will take with you the particular documents which have been offered. And you have listened to some very powerful arguments, which I think have adequately and fairly summarized for you, and in fairly brief compass, the essential elements of the case. The real reason that I charge you today instead of waiting until tomorrow is that I think it is very important that while these vivid arguments are fresh in your mind you return your verdicts.

There will be with respect to each defendant ten oral verdicts. So that, Mr. Foreman, when you return, you will be asked with respect to Count 1 whether you find the first defendant guilty or not guilty, with respect to the second defendant guilty or not guilty, and so on through all ten.

Have I failed to cover any important point?

MR. HURLEY. No, your Honor.

THE COURT. All right. You may retire to consider your verdicts.

[The Jury found each defendant "not guilty" on each of the ten counts.]