**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kevin J. DAUGHTRY, Defendant–Appellant.**

**No. 93–5703.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 31, 1995.

Decided March 3, 1995.

---

**830**

**ARGUED:** John Frank Hardaway, Columbia, SC, for appellant. Dean Arthur Eichelberger, Asst. U.S. Atty., Columbia, SC, for appellee. **ON BRIEF:** J. Preston Strom, Jr., U.S. Atty., Columbia, SC, for appellee.

Before WIDENER, WILKINS, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Judge WIDENER and Judge WILLIAMS joined.

## OPINION

WILKINS, Circuit Judge:

Kevin J. Daughtry appeals his conviction for knowingly and willfully making false statements in a matter within the jurisdiction of a department or agency of the United States. *See* 18 U.S.C.A. § 1001 (West 1976). Daughtry claims that the district court erred in failing to instruct the jury that in order to find that he acted willfully within the meaning of § 1001 it must find that he acted with an intent to disobey or disregard the law. Finding no error, we affirm.

### I.

Mansfield Business College (MBC), a private, for-profit business and technical school located in Columbia, South Carolina, was owned and operated by Careercom Corporation. Daughtry, an employee of Careercom, served as the director of MBC. Many of MBC's students received federal financial aid in the form of grants and guaranteed student loans. As an institution whose students were eligible for such aid, MBC was required to establish and maintain a refund policy for students who withdrew from the school before completing their course of study. *See* 34 C.F.R. § 668.22 (1988). Under MBC's refund policy, the amount of tuition refunded decreased with the length of time a student was enrolled. Daughtry was responsible for forwarding documents to Careercom identifying those students who had ceased to attend classes and their last date of attendance (LDA). Careercom then calculated refunds based on the LDAs, and the refunds were paid to a lending institution, the student, or the federal government according to the method of funding utilized by the student. Daughtry altered several LDAs to create the appearance that some students had attended classes for longer than they actually had. Thus, these students' tuition refunds were improperly reduced or eliminated.

### II.

The statute of conviction, 18 U.S.C.A. § 1001, provides:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

At trial, Daughtry requested the following instruction on willfulness: "An act is done 'wilfully' if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law." The district court refused to give this instruction, and instead charged the jury that "[a]n act is done willfully if it is done deliber-

ately and intentionally as contrasted with accidentally, carelessly or unintentionally."

## III.

Daughtry's sole argument on appeal is that the term "willfully" as used in 18 U.S.C.A. § 1001 must be defined as a specific intent to do what the law forbids. The proper meaning of the term "willfully" as used in § 1001 is a question of law subject to de novo review. *See United States v. Fiel,* 35 F.3d 997, 1005 (4th Cir.1994), *petition for cert. denied,* —— U.S. ——, 115 S.Ct. 1160, 130 L.Ed.2d 1116 (1995).

### A.

Daughtry first contends that the recent decision of the Supreme Court in *Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), has conclusively defined willfully to mean an intent to violate the law. In *Ratzlaf,* the defendant was convicted of structuring financial transactions in order to evade reporting requirements in violation of 31 U.S.C.A. §§ 5322(a), 5324(a)(3) (West Supp.1994). *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 657. Section 5324(a)(3) prohibits the structuring of currency transactions with domestic financial institutions "for the purpose of evading" certain reporting requirements. 31 U.S.C.A. § 5324(a)(3). This antistructuring provision is enforced by § 5322(a), which criminalizes the conduct of an individual who "willfully violat[es]" § 5324. 31 U.S.C.A. § 5322(a). The Court noted that willful "is a 'word of many meanings,' and 'its construction [is] often ... influenced by its context.'" *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 659 (alteration in original) (quoting *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943)). It then concluded that the term "willfully" in § 5322(a) should be construed as requiring a violation of "a known legal duty." *Id.* at —— ——, 114 S.Ct. at 659–60 (internal quotation marks omitted).

The Court articulated two reasons for this construction. First, addressing the statutory language, the Court noted that failure to construe the term "willfully" as requiring a knowing violation of the law would render that element of § 5322(a) superfluous in light

of the purpose requirement contained in § 5324(a)(3). *Id.* & n. 7. Further, the Court pointed out, structuring a transaction in order to avoid reporting requirements "is not inevitably nefarious," but rather is the type of activity that might be engaged in for innocent reasons (for example, to reduce the risk of an audit by the Internal Revenue Service). *Id.* at ——, 114 S.Ct. at 661. Accordingly, the Court concluded, defining the term "willfully" to require an intentional violation of the law was necessary to avoid criminalizing a broad range of otherwise innocent conduct. *See id.* at —— – ——, 114 S.Ct. at 660–62.

We do not believe that *Ratzlaf* controls the definition of the term "willfully" in the context of 18 U.S.C.A. § 1001. In 31 U.S.C.A. § 5322(a), the word "willfully" modifies "violat[es]," indicating that an individual must deliberately and intentionally violate the currency structuring laws in order to be convicted. In significant contrast, in § 1001 the word "willfully" modifies, *inter alia,* "falsifies, conceals or covers up ... a material fact, or makes any false, fictitious or fraudulent statements." Nothing in the language or structure of § 1001 indicates that one may violate § 1001 only by acting with knowledge of the existence of the law and an intent to violate or disregard it. *See United States v. Rodriguez–Rios,* 14 F.3d 1040, 1048 n. 21 (5th Cir.1994) (en banc) (dictum) ("In contrast to §§ 5322(a) and 5324, however, § 1001 does not contain any purpose requirement. Therefore, the *Ratzlaf* decision is inapplicable to the present case."); *see also United States v. Curran,* 20 F.3d 560, 567–68 (3d Cir.1994) (distinguishing intent required under § 1001—"deliberate action with knowledge that the statements were not true"— from intent required under 18 U.S.C.A. § 2(b) (West 1969), which "imposes liability on the person possessing the 'evil intent' to cause the criminal statute to be violated"). Moreover, defining the term "willfully" to require a knowing violation of the law would circumvent the holding of *United States v. Yermian,* 468 U.S. 63, 74–75, 104 S.Ct. 2936, 2942–43, 82 L.Ed.2d 53 (1984), that actual knowledge of federal agency jurisdiction is not required to prove a violation of § 1001.

In addition, it is unnecessary to construe the term "willfully" in § 1001 as requiring an intentional violation of the law in order to avoid criminalizing utterly blameless conduct. As noted above, the *Yermian* Court held that in order to prove a violation of § 1001 the Government need not prove that a defendant had actual knowledge that his false statement was made " 'in any matter within the jurisdiction' of a federal agency." *Id.* at 74, 104 S.Ct. at 2942. In so holding, the Court addressed the defendant's argument that the failure to so construe § 1001 would result in the imposition of "criminal sanctions on wholly innocent conduct." *Id.* (internal quotation marks omitted). While questioning whether it was appropriate to "characterize the intentional and deliberate lies prohibited by the statute ... as 'wholly innocent conduct,' " the Court concluded that "[t]he jury's finding that federal agency jurisdiction was reasonably foreseeable by the defendant, combined with the requirement that the defendant had actual knowledge of the falsity of those statements, precludes the possibility that criminal penalties were imposed on the basis of innocent conduct." *Id.* at 74, 75 n. 14, 104 S.Ct. at 2942, 2943 n. 14.

Here, the district court instructed the jury that it must find that Daughtry "contemplated that the document was to be utilized in a matter which was within the jurisdiction of an agency or department of the United States." We conclude that the instruction given by the district court adequately forestalled the possibility that Daughtry was prosecuted for wholly innocent conduct. Thus, it is unnecessary to construe the term "willfully" as used in § 1001 to mean a knowing violation of the law in order to reach this result.

And, although Daughtry would have us interpret the term "willfully" in such a way that one cannot violate § 1001 without knowing that it exists, we will not do violence to "the venerable principle that ignorance of the law generally is no defense to a criminal charge." *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 663; *cf. Liparota v. United States,* 471 U.S. 419, 425–27 & n. 9, 105 S.Ct. 2084, 2088–89 & n. 9, 85 L.Ed.2d 434 (1985) (construing statute criminalizing food stamp fraud to require that the defendant knew that his possession of food stamps was unauthorized, but specifically disclaiming a holding that the defendant must know that the unauthorized possession of food stamps was illegal).

## B.

Daughtry also argues that this court has previously held that one may violate 18 U.S.C.A. § 1001 only by acting with specific intent to disobey the law. Daughtry points to *United States v. Seay,* 718 F.2d 1279 (4th Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984), as support for this argument. In *Seay,* the defendant was convicted of violating § 1001 by falsely stating to the Department of Labor that she had not remarried since her husband's death, when in fact she had been in a common-law marriage for some time. *Id.* at 1280–81. This court quoted at length the jury instructions given by the district court, including the following: "An act is done willfully if done voluntarily and intentionally, and with the specific intent to do something which the law forbids; that is to say, with bad purpose either to disobey or to disregard the law." *Id.* at 1284.

Daughtry seizes upon this language and claims that, under *Seay,* proof of specific intent is required for a violation of § 1001. We disagree. The *Seay* court simply set forth the jury instructions given by the district court in their entirety without critical comment. Whether the jury was properly instructed as to the meaning of the term "willfully" was not an issue addressed by the court.*

* Daughtry also relies on *United States v. Maher,* 582 F.2d 842 (4th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979), which involved a conviction under the False Claims Act, 18 U.S.C.A. § 287 (West 1969). The district court in *Maher* appears to have instructed the jury that it must find that the defendant willfully violated § 287 in order to convict him

and defined the term "willfully" to require a knowing violation of the law. *See id.* at 846. Daughtry argues that we should adopt the definition of the term "willfully" approved by the *Maher* court because of the similarity between the language of § 287 and the language of § 1001. However, the language of the two acts is not similar. The word "willfully" does not appear in

Accordingly, we hold that the district court properly instructed the jury as to the elements of a violation of § 1001 and affirm Daughtry's conviction.

*AFFIRMED.*

§ 287—the district court apparently read it into the statute. And, as used in § 1001, the term "willfully" does not modify "violates" or in any way indicate that a violation of § 1001 requires a specific intent to violate the law. We therefore reject Daughtry's reliance on *Maher.*