UNITED STATES of America,
Plaintiff,

v.

PHOTOGRAMMETRIC DATA
SERVICES, INC., and David
G. Webb, Defendants.

No. CRIM. 99–471–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 21, 2000.

Jack Hanly, Assistant United States Attorney, United States Attorneys Office, Alexandria, VA, for Plaintiff.

David F. Geneson, Hunton & Williams, Laura A. Miller, Nixon Peabody LLP, Washington, DC, for Defendants.

*MEMORANDUM OPINION*

BRINKEMA, District Judge.

Before the Court is the defendants' Joint Motion to Set Aside the Verdict and Enter an Order for Judgment of Acquittal or for a New Trial, and defendant Photogrammetric Data Services, Inc.'s Motion to Set Aside the Verdict on the Basis of *Bruton v. United States*, and Enter an Order for Judgment of Acquittal or a New Trial. For the reasons stated below, both motions will be denied.

## I. Procedural History

Photogrammetric Data Services, Inc. ("PDS") is a Sterling, Virginia corporation in the business of preparing topographic maps from aerial photography and ground surveys for construction projects for various customers, including the Virginia Department of Transportation ("VDOT"). David G. Webb ("Webb") was the supervisor of the photogram department at PDS. On December 22, 1999, the United States filed an eight-count indictment against PDS and Webb, charging the defendants with Highway Project Fraud in violation of 18 U.S.C. § 1020, and Mail Fraud in violation of 18 U.S.C. § 1341. The indictment alleged in Counts 1–4 that PDS and Webb had knowingly made false statements, representations, and claims with respect to the quantity and costs of work performed in connection with the construction of a highway project by submitting false invoices for payments covering labor for which the defendants knew they were not entitled because the hours had been artificially inflated. Counts 5–8 alleged that the defendants had knowingly devised a scheme and artifice to defraud VDOT and

the Federal Highway Administration ("FHWA") and that the defendants had used the United States Postal Service and other interstate commercial carriers to further this scheme and artifice to defraud.

A four-day jury trial was held beginning on March 27, 2000. At the close of the government's case, the Court granted the defendants' Fed.R.Crim.P. 29(a) motion for judgment of acquittal as to Counts 2 and 6. The remaining Counts were submitted to the jury for deliberation, and the jury returned a verdict of guilty as to both defendants on Counts 1,3,5,7, and 8, and a verdict of not guilty as to both defendants on Count 4. The defendants then timely filed the post-trial motions which are now before us.

## II. Standard of Review

A jury verdict must be sustained if there is substantial evidence, when viewed in a light most favorable to the government, to support the verdict. *See United States v. Cummings*, 937 F.2d 941 (4th Cir.1991)(citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). Thus, so long as a reasonable trier of fact could find that the evidence establishes the guilt of the defendants beyond a reasonable doubt, the verdict cannot be set aside. *See United States v. Rasco*, 123 F.3d 222, 228 (5th Cir.1997).

## III. Joint Motion to Set Aside Jury Verdict

The defendants have raised a number of arguments which they contend support their position that the verdict should be set aside. They argue that the govern-

ment: (1) failed to allege and prove that the defendants made false statements in connection with a project approved by the Secretary of Transportation or an appropriately authorized delegee; (2) failed to prove that false statements were made in connection with a highway construction project, as required under 18 U.S.C. § 1020;[1] (3) failed to allege or establish a sufficient federal nexus to prosecute under § 1020; (4) failed to prove that the defendants acted with the specific intent to defraud, or with the requisite knowledge of the elements of the offense; (5) failed to demonstrate that the strictly interstate use of a private interstate carrier constitutes mail fraud; and (6) failed to prove that PDS invoices were delivered via United States mail or that Webb used the mail or caused the mails to be used. Additionally, the defendants have raised numerous arguments with respect to the jury instructions, suppression issues, and various other pre-trial rulings of the Court.

### A. Approval By the Secretary of Transportation

Defendants argue that the jury verdicts as to Counts 1 and 3 should be set aside because the government neither alleged nor proved that the alleged false statements were made in connection with the construction of a project approved by the Secretary of Transportation. Specifically, they contend that the government submitted no proof that the Secretary of Transportation personally approved any of the highway projects that are the basis for the § 1020 violations alleged in Counts 1 and 3.

1. 18 U.S.C. § 1020 reads, in pertinent part:
"Whoever ... knowingly makes any false statement, false representation or false report as to the character, quality, quantity, or cost of the material used or to be used, or the quantity or quality of work to be performed, or the costs thereof in connection with the submission of plans, maps, specifications, contracts, or costs of construction of any highway or related project submitted for approval to the Secretary of Transportation; or

Whoever knowingly makes any false statement, false representation, false report, or false claim with respect to the character, quality, quantity, or costs of any work performed or to be performed, or materials furnished or to be furnished, in connection with the construction of any highway or related project approved by the Secretary of Transportation" is guilty of a felony.

Although the defendants concede that the Secretary also has the power to delegate his authority,[2] they assert that the testimony of John Grounds, FHWA Financial Manager, was insufficient to establish that such a delegation had in fact been made, and no other testimony regarding this fact was elicited. The defendants point to Grounds' testimony that "we", *i.e.* FHWA, had been an authorized delegee of the Secretary of Transportation shows there was no legal delegation because § 322(b) allows only for delegation to an officer or employee, but not an agency. *See, Melrose Assoc. v. United States,* 43 Fed. Cl. 124 (Fed.Cl.1999).

We find this argument unsupported by the record. Grounds testified that he had been an FHWA employee for 27 years, and had been Financial Manager for the last 10 years. Tr. 484–85. He indicated that when his office receives funding requests from VDOT, the requests are first screened by engineers before he signs off on them, thereby committing federal funds to the project. *Id.* at 486. He testified that he is authorized to do so by the Secretary of Transportation. *Id.* Although the defendants make much of the fact that Grounds could not identify the precise regulation under which his authority is granted, his testimony that he does, in fact, have this authority was otherwise uncontroverted. We are therefore satisfied that his testimony was sufficient to establish that the highway projects at issue in Counts 1 and 3 had the approval of the Secretary of Transportation.

### B. *Connection To A Highway Construction Project*

■ Defendants assert that they should have been acquitted because the government did not prove that the alleged false statements were made "in connection with the construction of any highway or related

project", as required under § 1020. They argue that the government did not charge the defendants under the first paragraph of § 1020 which pertain to the creation or "the submission of plans, maps, [and] specifications" for highway or related projects. Conversely, the defendants contend that the second paragraph, under which the defendants were charged, relates to false statements made in actual highway construction projects. Thus, because defendants' photogrammetric work fell squarely under the rubric of Preliminary Engineering work for projects which necessarily had not begun, defendants argue that no false statement was made in an actual highway or related project.

The Government correctly responds that defendants' reading of § 1020 is strained. Upon close inspection, it becomes obvious that the first paragraph of § 1020 enumerates submissions such as plans, maps, contracts, etc. because that paragraph prohibits the making of false statements in submissions made "for approval by the Secretary of Transportation." If the project has yet to be approved, such preliminary work as plans, maps, and contracts are the only things in which a false statement could be made. Conversely, the second paragraph prohibits the making of false statements in submissions for projects "approved by the Secretary". Obviously, this paragraph encompasses all submission related to the project once it has been approved.

The assertion that the second paragraph is inapplicable to these defendants because the false statements were related to projects on which construction was never begun is unsupported. There is no requirement under § 1020 that the project, once approved, must move forward. The second paragraph of § 1020 is both retrospective and prospective in its sweep, prohibit-

---

**2.** The Secretary of Transportation "may delegate, and authorize successive delegations of, duties and powers of the Secretary to an officer or employee of the Department. An officer of the Department may delegate, and authorize successive delegations of, duties and powers of the officer to another officer or employee" of the Department. 49 U.S.C. § 332(b).

ing false statements concerning work "performed *or to be performed,* or materials furnished *or to be furnished.*" Thus, paragraph two of the statute includes all false statements made after approval by the Secretary of Transportation; there is no requirement, as defendants would have us read into the statute, that the false statement be made in connection with an "actual" highway or related project. We find that the defendants were properly charged and convicted under the second paragraph of 18 U.S.C. § 1020 because the projects for which they made false statements had been approved by the Secretary of Transportation.

### C. Lack of a Federal Nexus

■ Defendants next assert that the trial evidence does not establish a sufficient federal nexus to support a conviction under § 1020. In particular, they assert that no federal nexus exists because the government did not prove either the physical transport of an item in interstate commerce or that the challenged conduct had a substantial effect on interstate commerce, as required under *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Furthermore, the defendants contend that their actions had no impact on any federal interest because under the Federal–Aid Highway Act, federal government contributions meant to defray state costs of highway construction are awarded in fixed sums, and therefore operate as strict ceilings which completely insulate the United States from any overcharges. *See United States v. Azzarelli Constr. Co.,* 647 F.2d 757 (7th Cir.1981).

The government responds that both these arguments are without merit because the statute at issue in *Lopez* was struck down because it neither regulated an interstate commercial activity nor contained a requirement that the gun possession be connected in any way to interstate commerce. As the Court has recently clarified:

[T]he statute [in *Lopez* was defective because it] contained 'no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.' Such a jurisdictional element may establish that the enactment is in pursuance of Congress' regulation of interstate commerce.

*United States v. Morrison,* —— U.S. ——, ——––——, 120 S.Ct. 1740, 1750–51, 146 L.Ed.2d 658 (2000)(quoting *Lopez,* 514 U.S. at 562, 115 S.Ct. 1624). Because § 1020 contains, in the words of *Lopez,* a "jurisdictional element which would ensure, through case-by-case inquiry, that the [highway fraud] in question affects interstate commerce", then it does not run afoul of the Commerce Clause. *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624.

We agree with the government's position that approval by the Secretary of Transportation is the jurisdictional element sufficient to create a federal nexus under 18 U.S.C. § 1020. *Cf., e.g., United States v. Lindsay,* 184 F.3d 1138 (10th Cir.1999)(reversing federal bank fraud conviction because government failed to prove that bank was FDIC insured, an essential jurisdictional element); *United States v. Schultz,* 17 F.3d 723 (5th Cir. 1994)(same).

■ Second, we find no merit in the claim that no federal nexus exists because the party which sustained the injury as a result of defendants' false statements was VDOT. Defendants assert that "[n]othing in the Constitution gives Congress the power to turn a possible crime strictly against Virginia into a federal felony." Br. at 11. This disingenuous argument fails to recognize that the federal government has a patently obvious interest in insuring that federal funds, once distributed, are properly administered. Thus, a false statement made in relation to a highway or related project, may fall within the ambit of § 1020:

even when it is not submitted to a federal agency directly and the federal agency's role is limited to financial support of a program it does not itself directly administer ... the necessary link between deception of the non-federal agency and effect on the federal agency is provided by the federal agency's retention of the ultimate authority to see that the federal funds are properly spent.

*United States v. Petullo*, 709 F.2d 1178, 1180 (7th Cir.1983) (citations omitted); *see also, United States v. Shafer*, 199 F.3d 826, 828–29 (6th Cir.1999); *United States v. Gibson*, 881 F.2d 318 (6th Cir.1989).[3]

■ Moreover, defendants' reliance on *United States v. Azzarelli Construction Co.*, 647 F.2d 757 (7th Cir.1981), is unavailing, because that case dealt with a different statute, under the False Claims Act, 31 U.S.C. § 231, in a purely civil context. In *Azzarelli*, the Seventh Circuit found that the United States could not recover civil damages because it had suffered no actual injury in light of the fact that the Federal–Aid Highway Act awards a fixed amount to each state. *See id.* at 760–61. Our case is distinguishable from *Azzarelli* because the statute at issue, 18 U.S.C. § 1020, unlike the False Claims Act (which provides only a civil remedy), extends beyond claims for monetary remuneration by the United States to criminalize false representations made with respect to such things as the character, quantity, or quality of work done or materials used in a project receiving federal highway funds. Thus, Congress clearly intended to create a criminal cause of action not based solely upon fiscal loss. Perhaps more importantly, Congress has reacted negatively to the holding in *Azzarelli:*

[T]he Senate Judiciary Committee made clear that it intended the concept of loss to the United States to be considered broadly. As the Committee noted, the Seventh Circuit had held in [*Azzarelli*] that there was no loss to the United States, and hence no viable False Claims Act suit, where the federal government had contributed a fixed sum to Illinois for highway projects and thus would have paid out the same amount regardless whether contractors submitted false claims to the State. The Committee made clear it disapproved of this result, and expressly 'intended the new subsection ... to overrule *Azzarelli* and similar cases which have limited the ability of the United States to use the act to reach fraud perpetrated on federal grantees, contractors or other recipients of Federal funds.'

*U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731, 739 (D.C.Cir.1998)(quoting S.Rep. No. 99–345, at 22 (1986)); *see also U.S. ex rel. Koch v. Koch Industries, Inc.*, 57 F.Supp.2d 1122, 1128 (N.D.Okla. 1999). Accordingly, we find that there was a sufficient federal nexus to charge and convict these defendants under 18 U.S.C. § 1020.

### D. Specific Intent

■ The defendants assert that the verdicts should be set aside as to Counts 1 and 3 because the government did not prove that they acted willfully or with a specific intent to defraud the United States, relying on 23 C.F.R. § 633, subpt. C, App. A ¶ 5 (1999).[4] This issue was raised pre-trial when counsel for Webb renewed a motion to dismiss Counts 1–4 because the indictment failed to charge wilfulness, as defendant alleged was re-

---

**3.** *Petullo, Schafer,* and *Gibson* are cases involving 18 U.S.C. § 1001. We are aware that jurisdiction is expressly conferred under § 1001 to include "the jurisdiction of the executive, legislative, or judicial branch of the government." Although § 1020 is not as explicit, it nevertheless implicates the authority delegated to the Federal Highway Administrator, who is expressly charged with administer-

ing the Federal–Aid Highway Act. *See* 49 C.F.R. § 1.48(c); 23 U.S.C. § 101, *et seq.*

**4.** The preamble to the Regulations' discussion of § 1020 states that "[w]illful falsification, distortion, or misrepresentation with respect to any facts related to the project *is* a violation of federal law."

quired under *United States v. Molin* 244 F.Supp. 1015 (D.Mass.1965). Tr. at 86–90. We took the issue under advisement. At the close of the government's case, Webb's counsel asked the Court to take judicial notice of the regulation, but we declined to do so because defendants were being prosecuted for violating § 1020, which only requires that a defendant act "knowingly". The C.F.R. standard was found inapplicable:

> I've looked at this regulation and there is no question it's a C.F.R. regulation. And the Court would normally take judicial notice of that, except, I don't think it's relevant to this case. And the reason I don't think it is, is that the statute under which the defendants are being prosecuted in Counts 1 through 4 only contains the adverb "knowingly" ... And the one Massachusetts case notwithstanding, I think given what I would expect the Fourth Circuit's approach to be on that, I don't think wilfulness plays a role in those first four counts. And so, I think this would be completely irrelevant and could, in fact, be misleading. Because the C.F.R. is using a word which is not in the statute. And they're not being prosecuted for a violation of the regulation. They're being prosecuted for a violation of 1020 ... I realize this is a statute that's almost never used [but] I think it's extremely safe to construe a statute with the specific words that Congress used and they've only used the word 'knowingly' here.

Tr. at 862–63, 865. Defendants have raised no new arguments in their brief which cause us to question the correctness of our ruling during the trial. Accordingly, we find that the government was not required to prove willfulness or specific intent to defraud in order to properly sustain convictions of these defendants under 18 U.S.C. § 1020.

### E. Knowledge of the Elements of the Offense

█ Knowledge must generally be proven with respect to each element of the offense charged. *See, e.g., United States v. Ellen,* 961 F.2d 462, 466–467 n. 2 (4th Cir.1992). Defendants contend that Counts 1 and 3 should be set aside because the government failed to prove that the defendants knew that the work PDS invoiced was related to the construction of a highway or related project approved by the Secretary of Transportation or his delegee. The government counters that proof of such knowledge was not required in this instance because approval by the Secretary of Transportation or his delegee is merely a jurisdictional element, for which knowledge need not be proved. *See United States v. Feola,* 420 U.S. 671, 675, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Daughtry,* 48 F.3d 829, 832 (4th Cir.1995).

We are persuaded, consistent with the Supreme Court's discussion in *Feola,* that the requirement under § 1020 that the prohibited fraudulent statement must either be submitted to or approved by the Secretary of Transportation is only jurisdictional, and nothing more.[5] *See also United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984)(holding that proof of actual knowledge of federal agency jurisdiction is not required under 18 U.S.C. § 1001).

5. "Labeling a requirement 'jurisdictional' does not necessarily mean, of course, that the requirement is not an element of the offense Congress intended to describe and to punish. Indeed, a requirement is sufficient to confer jurisdiction on the federal courts for what otherwise are state crimes precisely because it implicates factors that are an appropriate subject for federal concern ... The significance of labeling a statutory requirement as 'jurisdictional' is not that the requirement is viewed as outside the scope of the evil Congress intended to forestall, but merely that the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute. The question, then, is not whether the requirement is jurisdictional, but whether it is jurisdictional only." 420 U.S. at 677 n. 9, 95 S.Ct. 1255.

## F. Mail Fraud Counts

■ In 1994, the mail fraud statute was amended to also prohibit the use of private or commercial carriers, in addition to the U.S. mails, in attempting to carry out a scheme or artifice to defraud. Defendants contend that the jury verdict should be set aside on all mail fraud counts because the government did not prove that the U.S. mails were used, nor did it prove that the private or commercial carriers that were used had delivered or transported mail in interstate commerce. Specifically, defendants assert that § 1341 is ambiguous, but that the legislative record clearly demonstrates an intent to amend the statute to address fraudulent interstate mailings effected by the use of private or commercial carriers. Defendants therefore ask us to read the statute as proscribing only the interstate use of private or commercial carriers, and to set aside the verdicts under the rule of lenity.

The canons of statutory construction require us to begin by analyzing the text of the statute, which is the "authoritative source" for gleaning legislative intent. *See Holder v. Hall*, 512 U.S. 874, 933, 114 S.Ct. 2581, 129 L.Ed.2d 687 (1994)(Thomas, J., concurring). In so doing, we should not construe the statute "so as to render any provision of [it] meaningless or superfluous." *Beck v. Prupis*, —— U.S. ——, ——, 120 S.Ct. 1608, 1616, 146 L.Ed.2d 561 (2000). "If the language is plain and 'the statutory scheme is coherent and consistent'", we may stop our inquiry there. *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 (4th Cir.1999)(quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). Given these guiding principles, we are confident that Congress intended the amendments to 18 U.S.C. § 1341 to extend to purely intrastate delivery of mails by private or commercial carriers as long as those carriers engage in interstate deliveries. A reading of § 1341 which would require that the interstate carrier actually deliver the matter interstate would produce an absurd result.

We note, as defendants have recognized, the case law is clear that a violation of § 1341 occurs when a thing is mailed intrastate via the U.S. mail because federal jurisdiction exists under the Postal Power, and not the Commerce Clause. *See United States v. Elliott*, 89 F.3d 1360 (8th Cir.1996)(citing cases). While jurisdiction lies only under the Commerce Clause for the use of private or commercial carriers, Congress may still regulate their intrastate activities because they are instrumentalities of interstate commerce. *See United States v. Lopez*, 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Thus, it is not surprising that courts have upheld other statutes under an analogous theory, despite the fact that the specific acts at issue occurred only intrastate. *See, e.g., United States v. Marek*, 198 F.3d 532 (5th Cir.1999)(finding that Western Union is a facility in interstate commerce and therefore affirming conviction under the federal murder-for-hire statute); *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir.1999)(finding that intrastate use of a cellular phone constituted use of a facility in interstate commerce under the Travel Act).

The 1994 amendment to § 1341 added a prohibition against sending an item through a private or commercial carrier in furtherance of the fraud. But it also criminalizes knowingly causing an item to be delivered by such a carrier "according to the direction thereon, or at the place at which it is directed to be delivered" in furtherance of the fraud.[6] Thus, by the

---

6. "Whoever ... for the purpose of executing [a] scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or things whatever to be sent or delivered by the Postal Service, *or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier*, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail *or such carrier* according to the direction thereon, or at the place at

express terms of the statute, for example, an entity in Virginia could properly be charged with mail fraud under § 1341 if it knowingly caused the item to be delivered in furtherance of the fraud, even if the delivery address is also in Virginia. If indeed Congress had intended to limit the reach of the 1994 amendment to interstate delivery only, then it would have been of paramount importance to amend or otherwise qualify that portion of the statute creating an offense based upon the place of delivery to reflect that such delivery occur across state lines. We can infer from Congress' failure to do so, given the totality of the evidence of what ill Congress was seeking to remedy, that it intended the statute to apply to both intrastate and interstate mailings. *See Burns v. United States*, 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991)("In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective"); *Quest Medical, Inc. v. Apprill*, 90 F.3d 1080, 1091 (5th Cir.1996)("Legislative intent can be inferred from the absence or presence of a particular provision in a statute."). Accordingly, we find that 18 U.S.C. § 1341 facially applies to the intrastate use of private or commercial carriers who engage in interstate commerce.

Likewise, we reject defendants' argument that the verdict should be set aside on Counts 5, 7, and 8 because the government failed to introduce sufficient evidence that the allegedly fraudulent invoices were mailed or that Webb caused the mails to be used. Denise Lade, PDS' officer manager who was responsible for mailing PDS' invoices, testified that after she got the VDOT time sheets for all photogrammetry work out of Webb's office, she would prepare the invoices which were mailed, either by U.S. mail or by UPS Ground, depending on the number to be sent and the type of project. Tr. at 668–70. The time sheets and invoices were maintained, and the mailings effected, all in the ordinary course of business. *Id.* at 666, 670–72. At trial she could not tell how a particular invoice may have been sent merely from looking at the invoice itself, but she was certain that it would have gone out either by U.S. mail or UPS. *Id.* at 680–81. In light of Webb's position within PDS and his experience in the company, we find inherently incredible defendants' argument that he was ignorant of how PDS processed invoices for payment or that the invoices were being mailed. Moreover, in light of Lade's testimony, there was ample evidence upon which the jury could convict the defendants of Counts 5, 7, and 8. *See United States v. United Medical & Surgical Supply Corp.*, 989 F.2d 1390, 1404 (4th Cir.1993)(holding that a mailing by defendant's agent satisfied mailing element of statute); *United States v. Norton*, 780 F.2d 21 (8th Cir.1985)(holding that the knowledge requirement is satisfied if defendant knew or could reasonably foresee that mailing would take place).

## G. Notice and Discovery Deficiencies

The defendants argue that the verdict should be set aside on all counts because the notice provided in the indictment and the post-indictment discovery provided to the defendants were insufficient to apprise the defendants of the charges they faced. In particular, defendants contend that the indictment was insufficient because, among other things, it did not specify or allege what services or materials were invoiced, it did not provide the amounts of the false invoices, it did not allege how many time sheets were altered, and it did not allege who among the defendants made the false statements. Moreover, they assert that the Bill of Particulars failed to cure these deficiencies because it did not identify how

which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be [fined or impris-

oned]." 18 U.S.C. § 1341 (West 2000)(emphasis on 1994 amendments).

much time was moved, where it was moved from, and how much of a total loss was sustained.

We find these claims to be without merit, as they were substantially addressed by the Court in the March 24, 2000 pretrial hearing. During argument for defendants' motion in limine, counsel for the government indicated that the reason he planned on introducing a multitude of time sheets was to rebut any argument on behalf of the defendants that any changes were either mistakes or inadvertent:

> Now on the alterations, 34 we've identified as supporting the counts, and I want the freedom to put in some more that the employees have clearly said are false. And sometimes it's, 'I changed them.' Sometimes it's, 'David Webb told me to change them.' Sometimes it's, 'This has been changed after I turned it in.' I want the jury to see the different types of things ... I identified as much as I could in the grand jury. I did it in the bill of particulars. I responded with each one and what entries on here were false on each of those 34[and] I told them, look and this column, and if there were particular dates, I identified the columns on each time sheet.

March 24, 2000 Tr. at 22–23. After considering the defendant's arguments, the Court determined that, in general, the indictment and the bill of particulars was sufficient to apprise the defendants of the charges against them:

> The government is not required in either the grand jury indictment or in the bill of particulars to lay out all the evidence that supports a particular charge. They're required to give defense counsel enough clear notice as to what it is the client is being charged with so they can defend and also plead jeopardy if they're convicted. And with a bill of particulars, again, it's not meant to lay out the government's entire case. It's meant to give the defense a fair shot at defending

the case. And I think there is enough detail [here].

*Id.* at 38. Nevertheless, to insure that the defendants were not crippled by a lack of notice and opportunity to prepare a defense, the Court struck a balance and allowed the government to introduce and use in its case-in-chief only those documents "that have been clearly identified for the defense along the parameters" defense counsel had set. *See id.* at 32. In light of this ruling, we find that the defendants were sufficiently apprised of the specific charges they faced and the evidence against them.

## H. Remaining Issues

The defendants also raise numerous additional issues which they contend support setting aside the jury verdict, among them: the Court erred in its jury instructions on mail fraud and aiding and abetting; the government failed to prevent the completion of the crimes alleged in Counts 7 and 8; the Court erred by admitting into evidence documents and testimony relating to non-charged items and to Counts 2 and 6, for which defendants were acquitted; and the Court erred by failing to suppress evidence illegally obtained by Bradley Broussard, and the tainted fruit of Broussard's allegedly unlawful search and seizure, *i.e.* the statements taken from Webb and the search of PDS, both occurring on January 20, 1999. We have carefully considered each of these arguments, and find them to have no merit.

## IV. PDS's Motion to Set Aside the Verdict on the Basis of *Bruton v. United States.*

 Defendant PDS asserts that, in light of defendant Webb's decision not to testify, the introduction into evidence of taped conversations in which Webb implicated wrongdoing by PDS violated its Sixth Amendment confrontation rights, relying on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Moreover, defendants contend that the Su-

preme Court has recently emphasized in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), that the mere fact that a statement qualifies as an exception to the hearsay rule does not justify its use in evidence against another defendant when constitutional concerns exist. Thus, PDS concludes that the jury verdict should be set aside as to it because the Court, despite *Bruton*, allowed into evidence the tapes recordings under Fed. R.Evid. 801(d)(2)(D).

We are satisfied that our decision allowing into evidence the tape recordings of Webb, as well as the statements he made to the officers at his home on January 29, 2000, was not erroneous. We reach this conclusion without finding it necessary to decide, as the parties dispute, whether the evidence adduced at trial sufficiently established a conspiracy so as to alternatively allow this evidence in under Rule 801(d)(2)(E). Under Rule 801(d)(2)(D), a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, is not considered hearsay and is therefore admissible. The statements made by Webb clearly satisfy this exception: he was questioned primarily about billing practices and procedures at PDS, while he was currently employed as manager of the photogram department.

■ In so finding, we are unpersuaded by PDS's argument that allowing the evidentiary exception embodied in Fed. R.Evid. 801(d)(2)(D) to trump *Bruton* effectively eviscerates that case, making a corporation's confrontational rights meaningless. First, *Bruton* and *Lilly* were not cases in which an agency relationship existed between the co-defendants. Thus, because a statement of an agent or servant concerning a matter within the scope of his employment made during the existence of the relationship is an admission of his employer, *see* 31 Michael H. Graham, 9 *Federal Practice & Procedure* § 6723 (1997), the facts of this case are decidedly

different from those in *Bruton* and *Lilly*. Moreover, as the *Lilly* decision recognized, firmly rooted hearsay exceptions are admissible over Sixth Amendment Confrontation Clause objections because the authors of that amendment "obviously intended to respect certain unquestionable rules of evidence" in drafting the Confrontation Clause. *Lilly*, 119 S.Ct. at 1894 (citing *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). We agree with the Fifth Circuit, the only court to decide the issue by published opinion, that hearsay exceptions under Rule 801(d)(2)(D) are firmly rooted. *See United States v. Walker*, 148 F.3d 518 (5th Cir.1998); *United States v. Saks*, 964 F.2d 1514 (5th Cir.1992). Accordingly, we find that our decision to allow into evidence Webb's various statements was not erroneous.

## V. Conclusion

For the foregoing reasons, all defendants' motions are denied. An appropriate Order will follow.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that defendants' Joint Motion to Set Aside the Verdict and Enter an Order for Judgment of Acquittal or for a New Trial be and is DENIED; and it is further

ORDERED that defendant Photogrammetric Data Services, Inc.'s Motion to Set Aside the Verdict on the Basis of *Bruton v. United States*, and Enter an Order for Judgment of Acquittal or a New Trial be and is DENIED.

The Clerk is directed to forward copies of this Order to counsel of record.