# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1712

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Derrick D. Howard, also known as | * | |
| Black Italian Snake, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 15, 2008
Filed: August 29, 2008

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Derrick Howard was convicted by a jury of obstruction of justice, in violation of 18 U.S.C. § 1503, threatening to murder an Assistant United States Attorney, in violation of 18 U.S.C. § 115(a)(1)(B), and three counts of using a facility of interstate commerce to commit murder-for-hire, in violation of 18 U.S.C. § 1958. These charges arose from an elaborate scheme that Howard orchestrated from prison to have three persons murdered, to frame an innocent man for those murders, and to deliver that man to the government as a means of reducing Howard's ten-year sentence on a felon-in-possession conviction. To facilitate the sentence reduction, Howard also took steps to have the Assistant United States Attorney who had prosecuted the firearm

charge murdered. The district court[1] sentenced Howard to 600 months' imprisonment, to run consecutively to his prior term of imprisonment. Howard has raised numerous arguments on appeal, only two of which merit extended discussion. Having considered all of the issues, we affirm.

## I. Failure to Grant a Continuance

After Howard was indicted on the present charges on April 25, 2005, he was transferred to the St. Genevieve, Missouri, County jail. Howard's phone calls from the jail were recorded and sent to the FBI, where a "taint team" redacted privileged conversations by making copies of the original recordings, except for those made by Howard to his attorney. The redacted recordings were then forwarded to the prosecutor, who produced them to Howard. After March 2006, calls to Howard's attorney were not recorded, so nothing was redacted after that time. In April 2006, Howard moved for discovery of the unredacted recordings of his communications with his counsel, which the magistrate judge[2] denied. Howard did not object to that portion of the magistrate judge's order and recommendation, and the district court adopted it on August 17, 2006. On December 29, 2006, five days before trial, Howard again moved for production of the unredacted recordings. The district court granted the motion, and the government delivered to Howard all the original recordings of his phone calls, totaling some 300 hours of conversation.

The district court denied Howard's motion for a continuance for time to review the newly produced recordings. Howard argues that the district court abused its discretion by denying his motion, contending that the unredacted recordings might

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

contain exculpatory material and that his trial counsel was unable to focus adequately on the trial after the recordings were produced. A district court has broad discretion to grant or deny a continuance. United States v. Hyles, 479 F.3d 958, 967 (8th Cir. 2007). Continuances are generally disfavored and are not granted without a compelling reason. Id. "We will reverse a district court's decision to deny a motion for continuance only if the court abused its discretion and the moving party was prejudiced by the denial." Id. (quoting United States v. Thurmon, 368 F.3d 848, 851 (8th Cir. 2004)).

Howard cannot show that he was prejudiced in any way by the timing of the production of this material. Howard was aware of the content of the late-produced recordings because they were recordings of his own conversations with his attorney. Howard does not actually claim that the unredacted recordings contain exculpatory material, but merely speculates that they might do so. Speculation is inadequate to establish prejudice, especially when the person indulging in the speculation has actual knowledge of the material's subject matter. Further, appellate counsel has now had access to these recordings for a number of months and has not come forth with anything in the unredacted recordings to support a claim of prejudice. In any event, it is unlikely that anything contained within the unredacted recordings would be admissible in court, and it is equally unlikely that any statement that Howard made to his attorney but had forgotten by the time of his trial would have affected the case in any way.

No other facts constitute a compelling reason for a continuance. The cases Howard cites are inapposite because they involve the government's failure to produce evidence that the government used or intended to use at trial. See United States v. Davis, 244 F.3d 666, 667 (8th Cir. 2001); United States v. White, 985 F.2d 271, 276 (6th Cir. 1993); United States v. Peveto, 881 F.2d 844, 861 (10th Cir. 1989); United States v. Wicker, 848 F.2d 1059, 1060 (10th Cir. 1988); United States v. Tamura, 694 F.2d 591, 598-99 (9th Cir. 1982); United States v. Baum, 482 F.2d 1325, 1331 (2d

Cir. 1973). Because the prosecution was unaware of the contents of the unredacted recordings, it neither used nor intended to use any of the unredacted recordings at trial. Additionally, although the magistrate judge denied Howard's first request for the unredacted recordings several months before trial, Howard failed to object to that portion of the order and recommendation and did not file the renewed motion until five days before trial.

Because these circumstances fail to demonstrate any prejudice to Howard or any other compelling reason why a continuance should have been granted, the district court did not err in denying Howard's request.

## II. Constructive Amendment of the Indictment

In accordance with the text of the applicable statute, the three murder-for-hire counts were titled in the indictment as "Use of a Facility *of* Interstate Commerce to Commit Murder-For-Hire." See 18 U.S.C. § 1958(a) ("Whoever . . . causes another . . . to use the mail or any facility *of* interstate or foreign commerce, with intent that a murder be committed . . . ." (emphasis added)). The text of the counts in the indictment, however, charged that Howard used "a facility *in* interstate commerce," a wording that may well have resulted from the fact that an earlier version of the statute used the word "in." See 18 U.S.C. § 1958 (amended Dec. 17, 2004).

Howard contends that his murder-for-hire convictions must be reversed because the indictment was constructively amended by the jury instructions' use of the word "of" instead of mirroring the indictment by using "in." "Constructive amendment occurs when the essential elements of the offense set forth in the indictment are in effect altered by the prosecutor or the court after the grand jury has passed upon them." United States v. Gill, 513 F.3d 836, 849 (8th Cir. 2008) (internal quotation omitted). Jury instructions that effectively allow a defendant to be convicted of an offense not alleged in the indictment constitute constructive amendments. Id.

-4-

Howard argues that the indictment, by using "in," requires proof that the phone call passed through multiple states before it can support the charges in this case.

The difference in language does not alter the essential elements of the charge because the phrase "to use the mail or any facility *in* interstate commerce" includes the intrastate use of facilities *of* interstate commerce. We have held that a person who used a local bank's automated teller machine to withdraw money from another local bank used a "facility in interstate commerce" because "an interstate network of ATMs . . . comprise, in the words of the statute, a 'facility in interstate or foreign commerce.'" United States v. Baker, 82 F.3d 273, 275-76 (8th Cir. 1996) (quoting 18 U.S.C. § 1952).[3] In interpreting the prior version of the statute that used "in" instead of "of," at least four other circuits have agreed with our holding. See, e.g., United States v. Perez, 414 F.3d 302, 304 (2d Cir. 2005) (per curiam); United States v. Richeson, 338 F.3d 653, 660-61 (7th Cir. 2003); United States v. Cope, 312 F.3d 757, 771 (6th Cir. 2002); United States v. Marek, 238 F.3d 310, 317-19 (5th Cir. 2001) (en banc) (citing Baker, 82 F.3d at 276). When Congress made the change from "in" to "of," it was merely to clarify and not to expand the statute:

> The Intelligence Reform and Terrorism Prevention Act of 2004, Pub.L. No. 108-458, 118 Stat. 3638, in part amended § 1958(a) by striking "facility in" and replacing it with "facility of." This specific amendment was entitled "Clarification of Definition" and purported to seek to eliminate any confusion that had previously existed, as evidenced by the circuit split. Because we agree with the Fifth Circuit [in Marek], we, also, view what Congress was doing as clarifying rather than expanding the scope of the criminal law.

---

[3]Although the language at issue was from 18 U.S.C. § 1952, the relevant language is identical to § 1958, and the two provisions are closely-related. See United States v. Marek, 238 F.3d 310, 317 n.29, 318 (5th Cir. 2001) (en banc).

Perez, 414 F.3d at 304 n.5.  The court in <u>Marek</u> also noted that in the legislative history of § 1958, the words "facility of" and "facility in" were used interchangeably and without apparent distinction.  238 F.3d at 321.  Accordingly, the jury instructions' use of the word "of" did not alter any essential element of the charge.

### III.  Other Arguments

Upon careful consideration, we conclude that the remaining arguments raised by Howard are without merit and do not require further discussion.

The judgment is affirmed.

_____