# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 3, 2011

No. 09-20635

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

THERON M. SMITH, also known as Asani M. Sabola,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CR-569-3

Before BARKSDALE, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Theron M. Smith pleaded guilty to, among other things, aggravated identity theft. On appeal, he argues that the district court plainly erred in accepting his plea because it did not follow the procedures set out in Federal Rule of Criminal Procedure 11. Because Smith has not shown plain error, we **AFFIRM**.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20635

## STATEMENT OF FACTS

Pursuant to a plea agreement, Theron M. Smith pleaded guilty to one count of conspiracy to commit mail fraud, wire fraud, and bank fraud, and one count of aggravated identity theft. The factual basis presented in the plea agreement reads as follows:

(a)     On July 16, 2008, a fraud investigator with Capital One Bank (an FDIC insured financial institution), contacted Postal Service Inspector Matthew Boyden. The investigator told Agent Boyden that for the past month, Capital One Bank had been investigating a series of new credit card accounts that were opened using fraudulent identity information.

(b)     The accounts were established over the telephone and the internet. The accounts were established using fraudulent names and social security numbers (SSNs) belonging to true people. Based on the new account applications, Capital One Bank mailed the new credit cards to the addresses listed on the fraudulent accounts. At the time, Capital One Bank had identified over five hundred and fifty (550) accounts that appeared to be fraudulent. All of these accounts were linked together by common factors such as addresses and telephone numbers. The SSNs all come [sic] back to juveniles who did not consent that their information be used by the defendants - the first five digits of the numbers were obtained from the Social Security Administration website.

(c)     An analysis of the fraudulent accounts revealed that the majority of the fraudulent accounts were opened in 2008, although fraudulent accounts established in 2007 have been identified. The investigator told Agent Boyden that the fraud was detected because the SSNs provided did not match the names and dates of birth provided. Capital One Bank was able to identify accounts that were opened using addresses in Houston (TX), Humble (TX), Beaumont (TX), League City (TX), Texas City (TX), Jacksonville (FL), Atlanta (GA), Fairburn (GA), Bay Point (CA), Carmichael (CA), Galt (CA), and numerous other locations (later determined to be accessible and controlled by Malon Jackson and Theron Smith). Based on the information provided by Capital One

2

No. 09-20635

Bank, Inspector Boyden was able to work with fraud investigators from other financial institutions to identify hundreds of additional fraudulent accounts related to this investigation.

(d)     Based on information developed during the investigation, Inspector Boyden applied for and received a federal search warrant for the residence belonging to Leslie Washington because several Capital One Bank credit cards had been mailed to Washington's residence.

(e)     On July 23 2008, Washington admitted opening a large number of fraudulent accounts via the telephone and public access computers and admitted receiving the fraudulent credit cards via the U.S. Mail. Washington stated she was recruited into the scheme by Malon Jackson and her husband Theron Smith.   Washington stated she met the couple through a mutual friend in Beaumont, Texas and then agreed with the pair to defraud Capital One Bank and other financial institutions. She stated that the couple utilized fraudulent addresses at different Commercial Mail Receiving Agency (C.M.R.A.) addresses in Beaumont and League City, Texas. Investigation by U.S. Postal Inspectors confirmed this information and uncovered additional addresses used by the trio and noted in paragraph (c).

(f)     Washington stated she would collect the fraudulent credit card mail and deliver it in person to Theron Smith or send via U.S. mail to Malon Jackson at different addresses provided by Jackson. These mailboxes had been rented by Malon Jackson. Cell phone records revealed that Jackson's cell phone had accessed fraudulent Capital One Bank accounts over eighty times.

(g)     In August 2008, a federal search warrant executed on Malon Jackson and Theron Smith's residence in Fairburn, Georgia revealed a cache of identification information relating to the fraud scheme including a credit card machine used to process the fraudulent credit cards delivered to Jackson and Smith as well as fraudulent credit cards and credit card applications that had been delivered to Jackson and Smith via U.S. Mail.

(h)     Video evidence obtained from Capital One Bank showed both Jackson and Smith using fraudulent credit cards obtained through the scheme to obtain funds.  Social security records confirmed that the personal identification information of true persons were used to open most of these cards.  For instance, in Count Three, charging a Capital One credit card mailed to 2925 Gulf Freeway in Houston for Account with the last for [sic] digits 5782, the card was opened with the identity of true person with the initials M.A. with the SSN ending in 4321. Similarly, in Count Four, with a Capital One card send [sic] to the same address, for the Capital One Bank account with the last for [sic] digits 0611, the card was opened with the identity of true person with the initials D.M. with the last for [sic] SSN digits 0842.  But for the identity of these true persons, Capital One Bank would not have extended credit on these and other fraudulent cards.

Before accepting Smith's guilty plea at his rearraignment proceeding, the district court informed him that the Government would be required to prove he "knowingly transferred, possessed or used without lawful authority a means of identification of another person[] and . . . that the transfer, possession or use was during or in relation to a felony violation of the mail fraud statute."  The court then referenced the factual basis as set forth in the plea agreement.  Smith told the court that the facts were true and that he had done everything as described in the plea agreement.

After rearraignment but prior to sentencing, the Government filed a notice to the district court informing it of the Supreme Court's decision in *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009). *Flores-Figueroa* held that in order to convict a defendant under 18 U.S.C. § 1028A, the Government must prove that the defendant knew that the means of identification he unlawfully possessed actually belonged to another person. *Id*. The Government stated that it believed the factual basis in Smith's case was sufficient and noted that the facts explained the identities used belonged to true persons and that Smith

No. 09-20635

obtained the identity information from the Social Security website.  The notice further stated that the Government had discussed the then-pending case of *Flores-Figueroa* with Smith prior to his guilty plea.  Smith did not move to withdraw his guilty plea and *Flores-Figueroa* was not addressed at sentencing.

Smith's presentence report (PSR) calculated his guidelines range at 41-51 months for the conspiracy conviction and noted that the identity theft conviction carried a minimum 24-month sentence.  During the sentencing hearing, Smith acknowledged that he had reviewed the PSR and discussed it with his lawyer. Explicitly relying on the PSR, the district court sentenced Smith to 41 months of imprisonment on the conspiracy conviction followed by 24 months of imprisonment on the aggravated identity theft conviction, resulting in a total sentence of 65 months.  Smith filed a timely notice of appeal.

## STANDARD OF REVIEW

Smith raises two points of error on appeal, neither of which he raised in the district court.  Our review, therefore, is limited to plain error.  *See United States v. Marek,* 238 F.3d 310, 315 (5th Cir. 2001) (en banc).  "Plain error review requires the appellant to show (1) there is an error, (2) that is clear and obvious, and (3) that affects his substantial rights."  *Id.*  (citation omitted).  "If these factors are established, the decision to correct the forfeited error still lies within our sound discretion, which we will not exercise unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.*  (citation omitted).

## DISCUSSION

Federal Rule of Criminal Procedure 11(b)(3) "requires the district court to determine that the *factual* conduct to which the defendant admits is sufficient *as a matter of law* to constitute a violation of the statute" before entering judgment.  *Id.* at 314.  Rule 11(b)(1)(G) requires the district court to address the defendant in open court and inform the defendant of "the nature of each charge

to which the defendant is pleading" before accepting a guilty plea. Smith contends that the district court did not fulfill either of these requirements in accepting his guilty plea.

## I.    Factual Basis

Smith first argues that the district court committed plain error in accepting his guilty plea because the factual basis did not establish that Smith knew that the identities he used belonged to real persons. In assessing whether the factual basis is sufficient, we may examine the entire record of the proceedings, *United States v. Vonn*, 535 U.S. 55, 74-75 (2002), including the facts adduced in the plea agreement and during the colloquy, *United States v. Palmer*, 456 F.3d 484, 489 (5th Cir. 2006), the factual findings in the PSR if the court explicitly relied on it, and inferences "fairly drawn" from evidence presented after the plea but before or at sentencing. *United States v. Hildenbrand*, 527 F.3d 466, 475 (5th Cir.), *cert. denied*, 129 S. Ct. 437 (2008) (internal quotation marks and citation omitted).

Smith urges the court to follow two recent unpublished cases in which we vacated the defendants' pleas of guilty to identity theft charges because the factual bases of their pleas did not establish the defendants' knowledge that the identities they used belonged to real people. *United States v. Ogbemudia*, 364 F. App'x 72 (5th Cir. 2010); *United States v. Kayode*, 381 F. App'x 323 (5th Cir. 2010). But in both *Ogbemudia* and *Kayode*, the Government conceded that the factual bases did not establish this element. *Ogbemudia*, 364 F. App'x at 73; *Kayode*, 381 F. App'x at 324. Here, the Government has made no such concession, and we must independently review the sufficiency of the factual basis.

Our review of the record convinces us that the factual basis supported Smith's plea. While the record does not explicitly state that Smith knew that the fraudulent credit cards utilized identities belonging to real persons, it contains

ample evidence from which the district court could draw that inference. *See Hildenbrand*, 527 F.3d at 475. Smith admitted in the plea agreement that the conspiracy opened over 550 credit card accounts using social security numbers of juveniles obtained from the Social Security Administration website and addresses rented by Jackson, Smith, and Washington. The factual basis explicitly stated that two of the credit cards were opened using the identities of true persons, listing their initials and social security numbers. Additionally, the PSR, which the district court explicitly adopted at sentencing and is part of the appellate record, notes Smith's admission to a probation officer that he knowingly "used without lawful authority, a means of identification of another person, to wit, *social security numbers of third-party victims*." Because the district court could fairly draw the inference that Smith knew that the identities he used belonged to real persons based on the plea agreement and the PSR, Smith fails to show that the district court plainly erred.

II.    Nature of the charge

Smith also argues that the district court erred in failing to advise him that the Government had to prove that he knew that the identities he used belonged to real persons. We have previously stated that "Rule 11's requirement that defendants understand the 'nature of the charge' against them refers to the elements of the offense." *United States v. Lujano-Perez*, 274 F.3d 219, 224 (5th Cir. 2001). The district court's duty to inform the defendant of the nature of the charge is "a distinct and separate requirement" from its duty to ensure that the factual basis supports the conviction. *Id.* at 226. In cases involving simple charges, "a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice" to fulfill the requirements of Rule 11. *United States v. Cuevas-Andrade*, 232 F.3d 440, 444 (5th Cir. 2000) (internal quotation marks and citation omitted).

No. 09-20635

It is undisputed that the district court read the indictment to Smith but did not explain the Supreme Court's decision in *Flores-Figueroa* to Smith. That the district court did not do so was understandable because the Court's decision in *Flores-Figueroa* was released after Smith pleaded guilty. Even if we were to assume that Rule 11 required the court to inform Smith of this legal development, this variance from Rule 11 was harmless. *See* FED. R. CRIM. P. 11(h). "To determine whether a Rule 11 error is harmless . . . we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993).

Although the court did not specifically state that the Government had to prove that Smith knew that the identifications he stole belonged to real persons, there is nothing to suggest that Smith did not understand the charge or the elements of the offense. Smith was aware of the pending *Flores-Figueroa* decision before pleading guilty and did not attempt to withdraw his guilty plea after the decision was issued by the Court. Most importantly, Smith does not contend that he would not have pleaded guilty but for the court's alleged error. The record definitively shows that the district court's failure to explain the Supreme Court's intervening decision in *Flores-Figueroa* to Smith after rearraignment was harmless and therefore was not plain error.

For the forgoing reasons, we **AFFIRM** the district court's judgment.